UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FXP LLC<br><br>   Plaintiff,<br>v.<br>TOWN OF FOXBOROUGH;<br>TOWN MANAGER, Kevin E. Paicos; BOARD OF SELECTMEN all in their official capacities only: Lawrence J. Harrington, James J. DeVellis, Mark S. Sullivan, Lorraine A. Brue, and Lynda A. Walsh,<br><br>   Defendants. | Civil Action No.: 12-_____-___ |

**VERIFIED COMPLAINT FOR
DECLARATORY JUDGMENT**

**Nature of this Action**

This is a civil rights complaint. The Town Manager of the Town of Foxborough has repeatedly refused to allow representatives of the plaintiff to speak at public meetings of the Board of Selectmen on matters that directly affect the plaintiff, a taxpayer and owner of real property in the Town. The Town Manager is aware that the content of the anticipated speech is contrary to the positions he wants the Board to take, and his repeated refusal to allow that speech violates plaintiff's constitutional rights. This suit seeks a declaration that that Town has violated Plaintiff's rights, damages, and an order that enjoins further violations of the free speech rights of FXP LLC ("FXP") at public Board of Selectmen meetings.

The content of FXP's anticipated speech involves two billboard structures located on FXP's land that, pursuant to the terms of a certain agreement will, on May 14, 2012, become the property of the Town of Foxborough (the "Town"). The Town, however, will have to remove those billboards from FXP property because the Town has no right to keep them there. The Town, nonetheless, has put the advertising on the billboards out to bid, has refused to acknowledge that it cannot award to a third-party contract rights to the billboards on FXP's land,

and refused to advise potential bidders of FXP's position that the Town has no right to keep the billboards on FXP's land.  The Town Manager has ignored repeated requests even to advise potential bidders of a dispute on this issue and has, instead, responded to FXP's requests by threatening to take the underlying property by eminent domain if FXP insists on it property rights -- even though such a taking would be on commercial grounds and not for any legitimate public purpose and would provide no net benefit to the Town since the fair value that would have to be paid would at least approximate any revenues the Town might receive by renting out the billboard space.  FXP has sought repeatedly to discuss this situation with Town officials, including several times with the Town Manager (<u>Defendant Kevin Paicos</u>) and the Board of Water and Sewer Commissioners (the "<u>Sewer Commission</u>").  Those efforts prompted no response to FXP except that Defendant Paicos and the Sewer Commission continued to pursue efforts to bid out rights to the billboards and devised a plan to take by eminent domain the FXP property on which the billboards sit.

Given these developments, FXP sought to raise its concerns with the Town Board of Selectmen during the open-forum "Citizen's Input" portion of that Board's meetings.  There, however, and at the instance of Defendant Paicos, the Board of Selectmen denied FXP the right to speak, in violation of FXP's rights under the First Amendment to the United States Constitution and the Massachusetts Declaration of Rights.  The Town's actions were unconstitutional because they suppressed FXP's political speech on an issue of public concern in a designated public forum and were based on viewpoint discrimination given the content of FXP's anticipated speech.  Specifically, the Town -- at the instance of Defendant Paicos acting as the Town Manager -- denied FXP its right to speak because that anticipated speech would contradict the viewpoint of the Town Manager and the Sewer Commission, who seek to take FXP's property by eminent domain and to bid out to third-parties' rights that impact FXP's property interests.

The Town has stated that it will continue to refuse to allow FXP to speak to these issues at future Board meetings, including one that is scheduled to discuss these issues at 7 p.m. on March 27.  In this lawsuit, FXP seeks a declaration that the Town has violated its rights,

damages, a permanent injunction barring the Town from continuing to do so in connection with FXP's real property rights, and attorneys' fees and costs under 42 U.S.C. §1983 and §1988.

## PARTIES

1. FXP is a limited liability corporation with a principal place of business at 1 Patriot Place in Foxborough, Massachusetts.

2. NPP Development LLC ("NPP") is an affiliate of FXP, (together with FXP, "FXP").

3. Defendant Town of Foxborough is a Town within this judicial district, organized under Massachusetts General Laws Chapter 43.

4. The Town of Foxborough (the "Town") operates under a selectman-town manager form of government. A true and correct copy of the 2004 State Act establishing the details of this form of government in the Town, 2004 Mass. Legis. Serv. Ch. 5 (West), is attached as Exhibit A.

5. Defendant Kevin E. Paicos lives at 21 Christopher Drive, South Easton, MA 02375 and, at all times relevant to this Verified Complaint, has been the appointed Town Manager and Procurement Officer for the Town, and in those capacities a representative and agent of the Town.

6. According to the State Act cited above, Mr. Paicos, as Town Manager, is the chief administrative officer of the town and acts as the agent for the Board of Selectmen; his responsibilities include general supervision over all matters affecting the interests of the Town, coordinating the Town's operational and strategic planning, implementing the decisions and policies of the Board of Selectmen, serving as the town's procurement officer, and overseeing all litigation involving the Town under the guidance of the Board of Selectmen. As Town Manager, Mr. Paicos also has "the right under the State Act to attend all Board of Selectmen meetings and the right to speak on all matters that come before the board."

7. Defendant Lawrence J. Harrington lives at 39 Shoreline Drive, Foxborough, Massachusetts 02035, and at all relevant times was the Chairman of the Board of Selectmen and acting in that capacity as a representative for the Town.

8. Defendant James J. DeVellis lives at 4 McKenzie Lane, Foxborough, Massachusetts 02035, and at all relevant times was an elected member of the Board of Selectmen and acting in that capacity as a representative for the Town.

9. Defendant Mark S. Sullivan lives at 24 Spruce Street, Foxborough, Massachusetts 02035, and at all relevant times was an elected member of the Board of Selectmen and acting in that capacity as a representative for the Town.

10. Defendant Lorraine A. Brue lives at 126 Mechanic Street, Foxborough, Massachusetts 02035, and at all relevant times was an elected member of the Board of Selectmen and acting in that capacity as a representative for the Town.

11. Defendant Lynda A. Walsh lives at 8 Pond Avenue, Foxborough, Massachusetts 02035, and at all relevant times was an elected member of the Board of Selectmen and acting in that capacity as a representative for the Town.

## JURISDICTION AND VENUE

12. This action is brought pursuant to 42 U.S.C. §1983 *et seq.*, and the First and Fourteenth Amendments of the United States Constitution and the Massachusetts Constitution. Venue is proper in the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1391(b). This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a).

## FACTUAL ALLEGATIONS

13. FXP owns approximately 48.94 acres of land located across the Boston Post Road (Route 1) from Gillette Stadium in Foxborough, Massachusetts (the "FXP Property").

14. NPP and FXP are affiliates of the Kraft Group, LLC and NPS, LLC (the entity that owns Gillette stadium).

15. James E. Cobery is Vice President of FXP and Daniel Murphy is a director of FXP; both are authorized officers or representatives of FXP and the Kraft Group.

16. During the period from 2007 to 2012, FXP has paid approximately $380,000 in property taxes to Foxborough on the FXP Property.

17. In June 2001, the Town took from FXP's assignor by eminent domain a fee interest in a parcel of land located within the FXP Property for purposes of a public water storage

and reuse facility. At the same time, the Town took by eminent domain easements over the FXP property for access to the water storage parcel for utilities and maintenance purposes. Attached as <u>Exhibit</u> <u>B</u> is a true and correct copy of the relevant June 19, 2001 Order of Taking. That Order of Taking does not permit the use of the easements for billboards, signs, or advertising.

18. On May 14, 2007, NPP entered into a Memorandum of Agreement with the Town (the "<u>2007 MOA</u>"), acting through its Sewer Commission. Among other things, and subject to its specific terms, the 2007 MOA provided for a certain option that the Town could exercise within five years in order to have NPP construct wastewater facilities on its property. As part of certain financing arrangements, the 2007 MOA provided that NPP could construct billboards and, after taking reimbursement for the cost of their construction from the advertising proceeds generated by those billboards, that NPP would share the advertising revenues with the Town on a 50/50 basis.

19. NPP built the two billboards (with four advertising faces), managed and maintained those billboards, and shared the advertising revenues with the Town. Between December 2007 and May 2011, the billboards generated approximately $420,000 for the Town. The billboards are located entirely on FXP property and close to the road the Town uses under its access and utilities easements for the Town's water tower parcel.

20. Under the 2007 MOA, if the Town did not exercise the option for NPP to build the wastewater facilities within five years -- by May 14, 2012 -- NPP would relinquish all rights to those billboards.

21. No provision of the 2007 MOA or any other agreement allowed the Town to keep the billboards on the FXP property after May 14, 2012.

22. Despite having no legal right to keep the billboards on FXP property after May 14, 2012, the Town and, more particularly, the Sewer Commission and Mr. Paicos as Town Manager and chief procurement officer, issued a public notice soliciting bids from third-parties for a five year services contract -- with an option for a five-year extension -- to manage the advertising and construction management services regarding the billboards located on FXP property. Attached as <u>Exhibit</u> <u>C</u> is a true and accurate copy of the February 1, 2012 bid package

bearing the title "Invitation For Bid For Outdoor Advertising Agreement for Management And Construction Management Services And License" (the "Invitation For Bid").

23.     As the procurement officer for the Town, Mr. Paicos' responsibilities include "buying, purchasing, renting, leasing, or otherwise acquiring" all services for the Town, and "all functions that pertain to the obtaining of [such] . . . service[s], including description of requirements, selection and solicitation of sources, preparation and award of contract, and all phases of contract administration." Mass. Gen. Laws ch. 30B, § 2.

24.     Nothing in the Invitation For Bid disclosed that the billboards were on FXP property on which the Town lacked any right to keep the billboards after May 14, 2012.  FXP made several attempts to have the Town notify potential bidders of these facts.

25.     In an e-mail from Mr. Cobery to Town counsel, Rod Hoffman, on February 13, 2012, FXP requested that the Town inform prospective bidders at the scheduled bidders' site visit on February 14 of the dispute as to the Town's authority to keep the billboards on FXP land. A true and accurate copy of that February 13 e-mail is attached as Exhibit D.  FXP did not receive any response to this request.

26.     At the bidders' February 14 site visit, the Town failed to inform the bidders of the information requested by FXP as stated in the preceding paragraph, so, on February 15, FXP, as, at that time, a prospective bidder, submitted written questions to the Town (and to Town counsel) under the bid procedures that addressed, among other things, the ownership status of the land on which the billboards sat, with the request that the Town answer the questions and provide copies of the questions and answers to all bidders.  A true and correct copy of this request, including the copy also sent to Town counsel, is attached as Exhibit E.

27.     The Town ignored this request and, when it answered the written questions of other bidders, did not include FXP's questions, even though, at that time, FXP was a prospective bidder.  A true and accurate copy of the Town's February 22, 2012 Report Of Questions And Answers and Amendment #1 to the Invitation For Bid is attached as Exhibit F.

28.     On February 28, 2012, FXP learned for the first time that the Sewer Commission would seek to have the Board of Selectmen adopt, at the Board of Selectmen meeting that night, a warrant article to authorize the Town to take the FXP property on which the billboards sit by

6

eminent domain.  Representatives from FXP attended the Board of Selectmen meeting that evening in order to ask to be heard on the eminent domain issue, but that issue was tabled until the next meeting on March 13, 2012, when Defendant Paicos would be present.  The Board of Selectmen indicated that the issue would be taken up at that meeting.

29. On March 5, 2012, the deadline for the submission of bids in response to the Town's Invitation For Bids passed with the Town receiving no bids.

30. By letter dated March 9, 2012, to FXP from Town Counsel -- that was copied to Mr. Paicos and Michael Stanton, the Vice Chairman of the Foxborough Sewer Commission, the Town offered to withdraw the proposed eminent domain warrant article in exchange for FXP's transfer to the Town of FXP's permits for the Route 1 billboards on FXP's land and FXP's agreement to allow the Town to bid out the billboards.  This letter made clear to FXP that the Town was using the threat of the governmental eminent domain power to give the Town bargaining leverage and an unfair commercial advantage over FXP by forcing it to give up FXP's rights in its property and contractual rights in the 2007 MOA.  A true and correct copy of that letter is attached as Exhibit G.

31. In a letter from FXP to Town Counsel dated March 12, 2012, which was also sent to Mr. Paicos and Mr. Stanton, FXP declined the Town's request and again raised the fact that the Town did not have a right to keep the billboards on FXP's property, that the Town's Invitation For Bids had failed to disclose this information, and that the Town's threat to take FXP's land by eminent domain was improper.  A true and correct copy of the March 12 letter is attached as Exhibit H.

32. All public parts of the Foxborough Board of Selectmen meetings, including citizen's input, are recorded and broadcast to the residents of Foxborough on a local television channel.

33. The agenda for the March 13, 2012 Board of Selectmen listed as topics "Citizen's Input" at 7 p.m. and, at 9 p.m., an Executive Session meeting to discuss "Real Property" jointly with an Executive Session of the Sewer Commission.  A true and correct copy of the Selectmen's Meeting Agenda for March 13, 2012, is attached as Exhibit I.

34.     The agenda for the March 13 Sewer Commission meeting also listed a joint meeting with the Board of Selectmen in Executive Session at 9 p.m. in the Town Hall "for the Purposes of Leasing, Selling or Exchanging Real Estate."  A true and correct copy of that agenda is attached as Exhibit J.

35.     In order for the Town to pursue a taking by eminent domain, the Board of Selectmen must vote to put that issue on the warrant for consideration by the voters at a Town Meeting, all as provided in Massachusetts General Law chapter 79, section 2 and chapter 40, section 14.  The Town would be authorized to pursue an eminent domain taking of FXP's land if, at a Town Meeting, a majority of registered voters voted to approve that warrant article.  The next Annual Town Meeting is scheduled for Monday, May 14, 2012.

36.     Based on the entries in the agendas for the Sewer Commission and the Board of Selectmen for March 13, and on the statements made about addressing the proposed eminent domain warrant article at the Board of Selectmen meeting on February 28, FXP expected that the Board of Selectmen would, at a minimum, consider whether to approve the Sewer Commission's request to put that eminent domain article on the warrant for a vote at the next Town Meeting.

37.     As a taxpayer and the property owner who would be directly impacted by the proposed eminent domain proceedings, as well as by the Town's efforts to bid out rights to the billboards on FXP's land, FXP sought to be heard in order to express its viewpoint as to the efficacy of such action by the Town government.  As part of this viewpoint, FXP also intended to speak about the propriety of the Town's action in issuing an Invitation For Bid as to the billboards when the Town had no right to keep the billboards on FXP land.

38.     All public parts of the meetings of the Board of Selectmen, including a part set aside for citizens' input, are broadcast to the residents of Foxborough on a local television channel and made available to the public for viewing by a link on the Foxborough Cable Access website.

39.     A Board of Selectmen's Meeting was held on March 13, 2012, in the Foxborough Town Hall from about 7 p.m. until about 10 p.m., not including the Executive Session held at the end of the meeting.  A true and accurate DVD containing a video recording of the public parts of the Board of Selectmen proceedings for March 13 is attached as Exhibit K.  A true and accurate

transcript of those proceedings as recorded on the DVD is attached to this Verified Complaint as Exhibit L ("Transcript").

40. At the start of the March 13 Board of Selectmen meeting, Chairman Harrington summarized the agenda, including that the meeting would start "as usual with citizen's input", and that later,

> we have a discussion with the water and sewer commissioners and I think some of this is going to be done in open session and some of it may be done in private session but since there has been enough issues in the newspaper and enough comments, I'd like to try to do as much of that in the public as possible so the public is aware of the discussions.

Transcript at 1.

41. A Foxborough resident, identified as Phil Henderson, a former member of the Sewer Commission, spoke during the Citizen's Input part of the March 13 Board of Selectmen meeting, including about the billboards and the 2007 MOA. Neither Mr. Paicos nor any member of the Board of Selectmen interfered with, complained about, or prohibited him from speaking about these issues.

42. Jim Cobery and Ted Fire, on behalf of FXP, appeared at the March 13 Board of Selectmen meeting and requested to speak during the Citizen's Input part of the meeting. When Chairman Harrington heard the topics on which they were speaking related to the topic that would be raised in the Executive Session at 9 p.m., he requested that they return and speak at that time. Specifically, Chairman Harrington stated,

> It's the Chairman's prerogative unless the Board disagrees to take as much of the 9:00 o'clock session in public. So there is total sunshine on all the issues and people understand the history, they understand the minutes, they understand what happened, they understand the money the Town might potentially lose, etc. So if that's what you really want to address, do you mind waiting until we have that as a topic item and you can join us in that dialogue.

Transcript at 4. Mr. Cobery and Mr. Fire agreed to the Chairman's request to speak at 9 p.m.

43. At about 9 p.m., the Board of Selectmen invited FXP to speak. Immediately after Mr. Fire began speaking, Mr. Paicos interrupted and strongly urged the Board of Selectmen to not allow FXP to be heard. The grounds for Mr. Paicos' objections was that allowing FXP to

9

speak was that there was no agenda item for FXP to speak, that FXP was a bidder in a pending bid process and that the allowing FXP to speak would be harmful to the Town's interest in the bid, and that the eminent domain warrant article was not on the agenda.

44. Mr. Paicos had made no such objections when Mr. Henderson had spoken.

45. Mr. Cobery corrected Mr. Paicos, explaining that FXP was not a bidder and that there was no pending bid process because the bid period had closed without the Town's receiving any bids. Mr. Cobery stated,

> Point number 1 there is no bid. The bid was opened on Monday and as we all know no one submitted a bid. Point number 2, our March 5 letter clearly indicates that we have chosen not to bid and so even if there were a bid and there is none, we would not be one of the bidders. Point number 3, we're here to talk about our land in Foxboro and the rumor that you're considering taking it by eminent domain. So I think, with all due respect, we have the right to be here as part of the public session earlier today. We graciously accepted your offer to stay until 9 o'clock and we're here if you allow it.

Transcript at 10.

46. Regardless of these facts, Mr. Paicos prevailed on the Board of Selectmen to not allow FXP to speak.

47. FXP accepted the Board of Selectmen's decision, with Mr. Cobery stating:

> I understand what you're saying, but I will tell you it is somewhat extraordinary for me as a lawyer and as just a citizen that we came here to offer citizen's input. We're not here to discuss things with you, we simply want to be heard. And to be told that, notwithstanding the fact that there is no bid currently outstanding, that when the bids were opened there were no bids, that on that same day we submitted a letter saying we're not bidding, to be told there's no bid, there's no bid from you, there's no open bid and you can't talk is amazing. Absolutely amazing to me and you know the fact that there is not Town Counsel here is quite frankly sad. I mean there really should be the case where we should be allowed to be heard but out of respect for this board, tell us when we should come back and we'll happily be here.

Transcript at 13.

48. Chairman Harrington invited FXP to request to be put on the agenda for the next Board of Selectmen meeting if FXP wanted to be heard and that such requests are generally accepted.

10

49. Mr. Paicos, however, then made the following statement (pages 13-14 of the transcript):

> Actually Mr. Chairman, when the board goes into executive session tonight some of this will be discussed with you for matters that are going to become very apparent and it will become very apparent why we cannot have this discussion in public. The only reason I mention that right now is so that the board understands you will not have to wait until tomorrow. Moreover, I have to say in honesty because I don't want to be disrespectful to our guest is that it is highly unlikely that they [FXP] are going to be invited back here to make these comments and I say that in the interest of full disclosure and honesty and respect so that we don't waste anybody's time. And that will become very obvious to you when we go into executive session.

50. After denying FXP the opportunity to speak, the Board of Selectman and the Sewer Commission met in executive session, a non-public session that was attended by Mr. Paicos and the Sewer Commission Commissioners, all of whom are government proponents of the effort to take FXP land by eminent domain and to bid out rights to the billboards on FXP's property. FXP was not allowed to attend the executive session and was given no right to provide its viewpoint -- which was opposed to the viewpoint of Mr. Paicos and the Sewer Commission -- even in the public session.

51. On March 19, 2012, the Sewer Commission held a meeting at which the Commissioners were to meet in executive session to matters concerning the FXP property, including as to eminent domain and bidding out rights regarding the billboards on FXP property. Having seen the Sewer Commission's agenda for this meeting and noting the executive session on a topic relevant to FXP, FXP sent a letter to the Sewer Commission in advance of that meeting, asking to be heard on these issues. When FXP attended that meeting, it was denied the opportunity to speak based on an e-mail that Defendant Paicos had sent to all members of the Sewer Commission and the Board of Selectmen.

52. On March 20, 2012, FXP sent a copy of Defendant Paicos' e-mail to him, explaining FXP's concerns with his actions and what appeared to be his attempt improperly to frighten the Sewer Commissioners and Board of Selectmen into denying FXP the right to speak by raising the specter of an "IG" "ruling" or "instruction" or "advisory" as to alleged "ethics violations" and procurement violations if any of the Commissioners or Selectmen were to speak

11

with representatives of FXP or the Kraft Group -- even at public meetings -- about eminent domain or the billboard issues. FXP expressed disagreement with Mr. Paicos' efforts and asked that he provide FXP with the basis for his assertions regarding any "IG" ruling. A true and correct copy of that letter is attached as <u>Exhibit</u> <u>M</u>, together with Mr. Paicos' March 19 e-mail. Mr. Paicos has not responded to that letter.

53. By letter dated March 21, 2012, FXP asked the Town Board of Selectmen for the right to speak as to FXP's point of view on the issues of eminent domain as to the FXP property and the issuance of requests for bids concerning the billboards on FXP's land. FXP expressly stated that it would not be a bidder in any request for bids for the billboards that Mr. Paicos, as the Chief Procurement Officer, had indicated he would soon issue. In the letter, FXP requested written assurance that it would be heard at the March 27, 2012, Board of Selectmen meeting or at any re-scheduled or continued Board of Selectman meeting where those issues would be addressed. That letter made the following specific request:

> By this letter, we request an opportunity to address those issues during the public part of the March 27 Board of Selectmen meeting (or any other date if the meeting is re-scheduled). As the owner of the FXP property, as a taxpayer in Foxborough, and as the principal party with an interest in the property that will be discussed in Executive Session, we have information that is important for the Commissioners to hear and consider before the Board decides to take what could be significant action regarding that property. We are concerned that, without hearing our input, the Board will only receive input from others with different points of view -- in particular, the Board of Water and Sewer Commissioners and the Town Manager -- who have a different viewpoint than FXP and who also have, in the past, been permitted to attend the Executive Session. Their input will exclude the viewpoint and important information we seek to provide. We are also prepared to attend the Executive Session if invited to do so.

A true and correct copy of FXP's March 21 letter to the Board of Selectmen is attached as <u>Exhibit</u> <u>N</u>.

54. The Board of Selectmen Agenda for the 7 p.m. meeting on March 27, 2012, has entries for public session items that include: "Citizen's Input" at 7 p.m.; "Annual Town Meeting Warrant" at 9:30 p.m.; "Discussion re: Billboard/Sewer Contract" at 10 p.m.; and, in Executive Session at 10:05 p.m., "Real Property Negotiations". A true and correct copy of the Agenda for

the March 27 Board meeting is attached as <u>Exhibit</u> <u>O</u>. The Board of Selectmen never responded in writing to FXP's March 21 letter.

55. On or about March 21, FXP learned that Mr. Paicos and the Sewer Commission planned to issue a new bid for the billboard rights, which would be publicly posted on or about March 28, 2012.

56. Dan Murphy of FXP had a telephone call on March 23 with Chairman Harrington of the Board of Selectmen, who indicated that Town Counsel had advised that, if representatives of FXP appear at the March 27 Board of Selectmen meeting and seek to speak during the open Citizen's Input part of that meeting, that the Board of Selectmen should not allow them to speak about the eminent domain or billboard issues and to relegate them to speaking to the media or sending out a mailing.

57. The Defendants at all relevant times acted under color of state laws within the meaning of 42 U.S.C. §1983.

## **CLAIMS FOR RELIEF**

### COUNT I
### (VIOLATION OF THE FIRST AMENDMENT AND THE MASSACHUSETTS CONSTITUTION)

58. FXP incorporate here by reference the allegations in all the preceding numbered paragraphs.

59. FXP had a fundamental right, guaranteed by the First Amendment to the United States Constitution, and made applicable to defendants through the Fourteenth Amendment to the United States Constitution, to speak at the Town of Foxborough Board of Selectmen meeting on March 13, 2012 on issues of importance to them and to the community, specifically, the issues regarding possible actions by the Town with respect to bidding and eminent domain involving the FXP property in Foxborough.

60. By prohibiting FXP from speaking at the Board of Selectmen meeting on March 13, 2012, as alleged herein, Defendants violated rights guaranteed to FXP by the First Amendment to the United States Constitution, applicable to the Defendants through the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

61.     Defendants' actions in restricting the FXP's speech violated FXP's rights under article XVI, as superseded by article LXXVII of the Articles of Amendment of the Massachusetts Constitution.  *See* Mass. Const. art. XVI, *superseded by* Articles of Amendment, art. LXXVII ("The right of free speech shall not be abridged.").

62.     Each Defendant had an affirmative duty to prevent other defendants from violating the constitutional rights of the plaintiff as described above and each Defendant failed in the exercise of that duty, which failures were intentional and in reckless disregard of the plaintiff's constitutional rights.

**Wherefore,** FXP demands declaratory and injunctive relief declaring unconstitutional the actions of Defendants in denying FXP the right to speak at Board of Selectmen meetings; temporary, preliminary, and permanent injunctions prohibiting each Defendant from denying FXP the right to speak at public parts of the Board of Selectmen meetings regarding FXP property rights and issues pertaining to the billboards on FXP land; awarding FXP damages in an amount to be determined at trial; and awarding FXP attorneys' fees pursuant to 42 U.S.C. §1988; and for such, other and further relief as this Court may deem just and proper.

Respectfully submitted,

Plaintiff
FXP LLC

By:_/s/_Andrew Phelan_____
Daniel L. Goldberg (BBO No. 197390)
Andrew C. Phelan (BBO No. 643160)
Stephen J. Quinlan (BBO No. 679205)
BINGHAM McCUTCHEN LLP
One Federal Street
Boston, MA 02110
(617) 951-8000
*Attorneys for Plaintiff*

Dated: March 26, 2012

As to the Factual Allegations:

Signed under the penalties of perjury this 26th day of March, 2012.

_James E. Cobery_
James E. Cobery,
Vice President, FXP LLC